UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

| UNITED STATES OF AMERICA | * |  |
|---|---|---|
|  | * |  |
| v. | * |  |
|  | * | MAGISTRATE NO. TMD-20-3132 |
| DESMOND BABLOO SINGH | * |  |
|  | * |  |
| Defendant. | * |  |

\*\*\*\*\*\*\*

## GOVERNMENT'S EMERGENCY MOTION FOR REVOCATION OF RELEASE ORDER

For more than seven months, the defendant has followed through on his threat to Jane Doe that she should "expect a wave of the worst possible shit to happen to you lmao." He has hacked her accounts, "swatted" her with a hoax bomb threat, "doxed" her, and bombarded her, using more than a hundred different electronic and social media accounts, with harassing and threatening messages—many of which included violent, sexualized, and racist threats. The defendant's egregious criminal behavior has even extended to an ex-boyfriend of Jane Doe's, who has also been subjected to threatening and harassing messages. The defendant even traveled from New York to a Baltimore residence where he believed he could find the ex-boyfriend and "fight" him, a visit the defendant recorded and sent to Jane Doe and her ex.

The defendant has made it clear that he meant it when he told Jane Doe that he's "genuinely never going to stop." The defendant's conduct poses a tremendous danger to Jane Doe, her ex-boyfriend, and the community. Nothing short of pretrial detention would reasonably assure their safety.

1

A magistrate judge in the Southern District of New York ordered that the defendant be released, with conditions, pending his trial, but that order is temporarily stayed (through Monday, December 28, 2020). The government now respectfully moves this Court to revoke the release order and order that the defendant be temporarily detained pending a hearing before a district judge in the District of Maryland, where the defendant is charged.

I.     **PROCEDURAL POSTURE**

On December 14, 2020, the United States District Court for the District of Maryland issued a criminal complaint charging the defendant with:

| COUNT | OFFENSE | DATE |
|---|---|---|
| 1 | Cyberstalking (18 U.S.C. § 2261A(2)) | 4/18/2020 through 11/24/2020 |
| 2 | Intentional Damage to a Protected Computer (18 U.S.C. § 1030(a)(5)(A)) | 7/19/2020 |
| 3 | Aggravated Identity Theft (18 U.S.C. § 1028A(a)(1)) | 7/19/2020 |
| 4 | False Information and Hoaxes (18 U.S.C. § 1038(a)(1)) | 7/20/2020 |
| 5 | Murder for Hire (18 U.S.C. § 1958) | 10/10/2020 |
| 6 | Intentional Damage to a Protected Computer (18 U.S.C. § 1030(a)(5)(A)) | 11/24/2020 |
| 7 | Aggravated Identity Theft (18 U.S.C. § 1028A(a)(1)) | 11/24/2020 |

(Dkt. #6). The same day, a warrant was issued for his arrest.

On December 22, 2020, the defendant was arrested in the Southern District of New York. That day, he appeared before U.S. Magistrate Judge Barbara Moses for an initial appearance pursuant to Fed. R. Crim. P. 5(c)(3). At the hearing, the defendant waived his right to an identity hearing, conceding that he is the same person named in the complaint.

2

At the hearing, the government moved for detention, pursuant to 18 U.S.C. §§ 3142(f)(2)(A) and (f)(2)(B). Judge Moses proceeded to hold a detention hearing. Following proffers and arguments by counsel for the government and for the defendant, and questioning of the defendant's mother, Judge Moses ordered the defendant released on conditions, including that the defendant reside with his parents in the Western District of Texas.

On the government's motion, Judge Moses stayed her release order through Monday, December 29, 2020, pending a government appeal. A copy of the order is not yet available on the public docket. An expedited transcript of the Southern District of New York hearing has been requested, but is not yet available.

The government now moves this court for an order pursuant to 18 U.S.C. § 3145(a)(1) revoking the Southern District of New York's release order pending a detention hearing in the District of Maryland. The district court where the charges against a defendant are pending has the ultimate authority to determine whether the defendant should be detained pending trial. *See United States v. El Edwy*, 272 F.3d 149, 153 (2d Cir. 2001) (citing *United States v. Evans*, 62 F.3d 1233 (9th Cir.1995); *United States v. Torres*, 86 F.3d 1029 (11th Cir.1996)); *but see United States v. Johnson*, No. 96-4173, 1996 WL 711592 (6th Cir. Dec.10, 1996) (unpublished). This Court conducts its own *de novo* review of an out of district magistrate's release order. *See e.g., United States v. Williams*, 753 F.2d 329, 333 (4th Cir. 1985).

## II.  RELEASE OF THE DEFENDANT WOULD POSE A DANGER TO THE VICTIMS AND THE COMMUNITY

At the hearing, the government will proffer evidence demonstrating that each of the factors to be considered under the Bail Reform Act supports his detention pending trial. The evidence will make clear that the nature and circumstances of the offenses, the history and characteristics of the

3

defendant, and the overwhelming weight of the evidence all support detention of the defendant pending trial. Most important, however, is the grave danger that pretrial release of the defendant would pose to the safety of the victims, their families, and the community.

### A. The Offenses are Extremely Serious and Merit Pretrial Detention

The evidence provides ample probable cause to believe that the defendant has committed extremely serious offenses against the United States and should be detained. *See* 18 U.S.C. § 3142(g)(1). The pending charges are very serious. As set forth in the detailed affidavit supporting the criminal complaint, for more than seven months, the defendant terrorized, threatened, and harassed Jane Doe, her ex-boyfriend, and others. This felonious conduct included the use of more than one hundred different social media, electronic communication, and phone accounts to send Jane Doe and her ex-boyfriend harassing and unsolicited messages.

### The Defendant's Apparent Obsession with Jane Doe

In approximately 2013-2014, when Jane Doe was a middle school student, she was a friend of the defendant's older sister during one school year. At the end of that school year, the defendant's family relocated to Texas. Jane Doe was not close friends with the defendant's sister, and they did not stay in touch after the defendant's family moved. Jane Doe has never met the defendant in person, and has never been in any sort of relationship with him. Jane Doe only knows the defendant as the younger brother of an old friend from middle school.

Around the time the defendant's family moved to Texas, he sent Jane Doe requests to follow her on multiple social media platforms, and Jane Doe granted the requests. Between 2014 and February 14, 2020, Jane Doe engaged in only a handful of brief messaging conversations with

4

the defendant. She stated that she occasionally received strange and sometimes offensive messages from him. Jane Doe ignored most of the defendant's messages.

In approximately November 2019, Jane Doe exchanged messages with the defendant about living in New York. But then, on February 14, 2020, an event occurred that likely set in motion the series of disturbing and criminal events that are the subject of the charges pending against the defendant: The defendant sent an Instagram story, depicted below, to Jane Doe consisting of text and an image of a necklace.

> I GOT YOU THIS VIVIENNE WESTOOD NECKLACE AND KISSER THE GIRAFFE [IT'S STILL ON ITS WAY] AND I GO TO LIM [I ONLY APPLIED THERE AND FIT] BUT IM TAKING THE SEMESTER OFF BECAUSE I REALLY AM WORKING FOR FEDEX AND CBA WITH SCHOOL RIGHT NOW BECAUSE I GENUINELY DESPISE EVERYONE THERE AND I DIDN'T GET INTO FIT PROBABLY BECAUSE MY FALL GRADES WERE STILL PROCESSING AND THEY WERE MOST LIKELY STILL LOOKING AT MY HIGH SCHOOL GRADES BUT I HAD A 3.1 AND MY ESSAY WAS REALLY GOOD SO IDK BUT I'M APPLYING AGAIN FOR SOPHOMORE YEAR AND I'M STAYING WITH ONE OF MY FRIENDS IN LI UNTIL I GET AN APT IN MANHATTAN WHICH SHOULD BE IN LIKE A COUPLE WEEKS OR SO I'M FLYING BACK TO AUSTIN TODAY AND COMING BACK ON WEDNESDAY **I COULD LITERALLY COME TO MANHATTAN EVERY DAY WHENEVER YOU WANT ME TO I DON'T CARE IF IT'S 5AM AND YOU WANT TO SEE ME FOR ABSOLUTELY NO REASON IT WOULD TAKE ME AN HOUR AT THE MOST BUT ANYWAYS I LOVE YOU**. DID YOU SEE THE PARAGRAGH IF NOT HERE IS THE LINK AGAIN, [link to privatebin.net webpage] **I LOVE YOU SO MUCH THERE IS LITERALLY NOTHING I CAN SAY TO TRULY EMPHASIZE IT**. I DON'T WANT TO DOUBLE TEXT YOU I HONESTLY DON'T KNOW WHAT'S GOING ON AND I'M REALLY SCARED AND CONFUSED AND HAVE BEEN FOR THE PAST 6 MONTHS.
>
> I REMOVED EVERYONE FROM MY CLOSE FRIENDS EXCEPT YOU ONLY YOU CAN SEE THIS.

(emphasis added).

According to information obtained from the defendant's iPhone, which was searched and seized pursuant to a federal warrant, a document was created in the defendant's Notes app on or about December 27, 2019, almost all of which is incorporated into the Instagram story. A final version of the text from the Instagram story was created in the Notes app on the defendant's phone on February 14, 2020, the date it was sent to Jane Doe.

The Instagram story linked to a paragraph posted on privatebin.net, a text-sharing website. In the text, the defendant further professed his love for Jane Doe:

> This document will expire in 23 hours.
>
> nothing i can say could truly emphasize how much of an insanely talented, powerful, beautiful, intelligent, and perfect human being you are. Two quotes that I feel like most corresponds with how I feel about you by Sylvia Plath "I too want to be important. By being different. And these girls are all the same." and "When you give someone your whole heart and he doesn't want it, you cannot take it back. It's gone forever." I work with so much effort into doing things that could potentially impress you. I like you more and more every day. The only thing that kept me motivated throughout high school was the thought of potentially having the chance of going out with you. Every meticulous detail about you, your straight dark brown hair, your brown/green eyes, your demeanor, your talent, your sense of humor, and everything else is the epitome of perfection.

According to information obtained from the defendant's iPhone, on November 30, 2019, a document was created in the defendant's Notes app, almost all of which is incorporated into the privatebin.net message sent on February 14, 2020. A revision of the privatebin.net message was created on the defendant's phone on December 10, 2019.

Jane Doe, who had never met the defendant in person, rejected his romantic advances, stating that she was not interested in a relationship with him. Jane Doe asked the defendant not to contact her any further.

**The Defendant's Cyberstalking Campaign Against Jane Doe and Others**

The evidence shows that the defendant was infuriated that the declarations of love he had planned out for months were summarily rejected. In response, he waged a months-long campaign of cyberstalking and terror against Jane Doe and others. As the defendant wrote in a text message he sent to Jane Doe when she asked him to stop his conduct in May 2019, he is "genuinely never going to stop":



The many hundreds of messages the defendant sent to Jane Doe, her ex-boyfriend, and others included express and implied threats of death and bodily injury, sexualized violence, and racial slurs. The defendant has accessed several of Jane Doe's electronic accounts without authorization, changing her passwords to lock her out of her accounts and posting offensive images and statements to her accounts without authorization. The defendant obtained personal images that had been privately stored in Jane Doe's Snapchat account. These images were later posted on social media accounts used to harass Jane Doe, and sent via text message to Jane Doe and her family members.

The defendant has "doxed" Jane Doe on a number of occasions, publicly posting her address, phone number, and electronic accounts, and encouraged others to harass the victim. The defendant publicly posted personally identifying information of Jane Doe's family members.

The defendant has "swatted" Jane Doe, causing a police response to her Baltimore County residence in response to a bomb threat email. Evidence located on the defendant's phone and in his online communications also indicates that he has solicited others to "swat" Jane Doe. The defendant's course of conduct has caused Jane Doe and her family substantial emotional distress and fear for her life and safety.

The defendant's conduct has also caused Jane Doe's ex-boyfriend and his family substantial emotional distress and fear for his life and safety. The defendant has sent harassing messages and posted messages attacking this ex-boyfriend, who, based on the defendant's messages, the defendant apparently views as a romantic rival.

8

Of great import to the issue of whether the defendant should be detained pending trial, the government recently obtained additional information that the defendant's conduct went beyond the computer screen. After learning of the defendant's federal arrest, the ex-boyfriend's family contacted law enforcement to provide additional information. In the fall of 2020, the defendant traveled to a residence where Jane Doe's boyfriend used to live and videotaped himself knocking on the door. On November 8, 2020, a video was uploaded to YouTube with Jane Doe's ex-boyfriend's name as its title. The video is approximately two minutes and seventeen seconds long. In the video, a person holding a camera repeatedly knocks on the front door of a residence. The caption included with the upload reads "[Jane Doe's ex-boyfriend's] house [street address] Baltimore MD I pulled up to fight him he's a pussy." The residence appearing in the video is a residence where Jane Doe's ex-boyfriend formerly lived with his family, and is located at the street address listed in the caption.

On July 24, 2020, a message was created in the Notes app on the defendant's iPhone with the name of Jane Doe's ex-boyfriend as its title, and listing the address appearing in the video. The note also included:

> HES POOR AHAHAHAJAH
>
> I WENT TO THIS UGLY KIDS HOUSE TO SLAP THE SHIT IUT [sic] OF HIM (HAVE RECORDING) AND HE DIDNT OPEN THE DOOR LMFAOOO

Footage from the video was posted by several of the harassing social media accounts, and was sent to Jane Doe and her ex-boyfriend. Images and videos of the door of the residence were located on the defendant's iPhone, with metadata indicating that they had been recorded in Baltimore. Other data located in the defendant's phone indicated that the device was used near the Maryland residences of other family members of Jane Doe's ex-boyfriend. In short, the evidence

here, including what appear to be original photographs and videos, shows that the defendant was engaged in more than online harassment—he apparently personally traveled to Baltimore to physically assault one of the subjects of his ire.

On July 13, 2020, Jane Doe petitioned for and obtained an interim peace order with the District Court of Maryland for Baltimore County, seeking protection from stalking by the defendant. On July 13, 2020, Jane Doe also filed an application for a statement of charges with the District Court of Maryland for Baltimore County. On July 24, 2020, the District Court of Maryland for Baltimore County entered a temporary peace order against the defendant. Law enforcement officers were unable to locate the defendant to serve him with court documents, and he did not appear at scheduled temporary or final peace order hearings.

On July 19, 2020, less than a week after Jane Doe petitioned for a peace order against the defendant, Jane Doe received an Instagram follow request from an account that included pictures of her house, her ex-boyfriend's former house, and information doxing Jane Doe. The account included a message stating "[Jane Doe] throwing a Party At [Jane Doe's Baltimore County Residence Address] tomorrow guys." According to information provided by Instagram, the account that sent the message was created that day, with a registered email address in the defendant's name and connected to his wireless phone number.

On the evening of July 19, 2020, Jane Doe received notice by email that her Snapchat account had been accessed by the user of an iPhone 11. According to information provided by Snapchat, between 7:38 p.m. July 19, 2020, and 12:21 a.m. July 20, 2020, Jane Doe's Snapchat account was accessed by IP addresses assigned to AT&T Wireless, the defendant's carrier. According to public databases, each of these IP addresses was located in the New York, New York,

10

area. At the time, Jane Doe was located in Maryland. Jane Doe then received notice from Snapchat that the email address for her account had been changed to a Gmail address that was not hers. According to information provided by Google, the Gmail address was created on June 13, 2020, with the defendant's AT&T Wireless number as the accounts recovery SMS number.

On July 20, 2020, at approximately 6:28 a.m., a Baltimore County employee received an email reading "PLEASE INVESTIGATE [JANE DOE'S BALTIMORE COUNTY ADDRESS] POSSIBLE BOMB SEND OFFICERS ASAP!!!!DO NOT HAVE ACCESS TO PHONE THIS IS THE ONLY POLICE EMAIL I CAN FIND!!!" At approximately 7:00 a.m., Baltimore County Police responded to Jane Doe's residence.

Upon receiving the call for service, Baltimore County police units were dispatched and staged at a nearby area. Multiple police resources including Bomb Squad, and K9 units were placed on stand-by during this incident. Officers determined there was no real threat or hazards at the location and it was determined to be a "swatting" incident. Jane Doe's father advised responding officers that he and his wife were expecting someone to arrive to their house in reference to the "party" that was posted on Instagram. Jane Doe's father stated that neither he, his wife, nor Jane Doe have ever met the defendant. Jane Doe further advised she was in contact with the defendant's mother, in an effort to stop the harassment.

Baltimore County police contacted the Temple Police Department in Texas and requested an officer to respond to the defendant's last known Texas address. Temple officers made contact with the defendant's parents, who stated that he was attending college in New York, however, he was currently not enrolled in school due to the COVID-19 pandemic. The defendant's parents told

the police they believed their son was homeless and expressed that they were very worried about him.

The day after the swatting, July 21, 2020, at approximately 7:40 a.m. hours, Jane Doe received a text message stating "you're getting swatted" and "ur dads SSN [XXX-XX-XXXX]." The messages also included images from Jane Doe's private Snapchat account. The phone number used to send the message was assigned to a text messaging application. The account was created approximately a minute before the message was sent, using an email address tied to the defendant's wireless phone number. This was the same email address that Jane Doe's Snapchat account was reassigned to without her authorization.

On October 10, 2020, Jane Doe contacted law enforcement after being made aware of a public group chat on the Telegram messenger app. In the group chat, named "Doxbin," a user with the Telegram identifier "desmond" solicited individuals to "swat Jane Doe," and to rape and decapitate her. A portion of the messages from the group chat follow:

| TELEGRAM USER | TIME | MESSAGE |
| --- | --- | --- |
| desmond | 14:29 | I'm gunna kill [Jane Doe] |
| desmond | 14:29 | guys anyone want to swat [Jane Doe] |
| desmond | 14:30 | [Jane Doe] deserves death |
| desmond | 14:31 | I don't like that bitch |
| desmond | 14:32 | [in response to message "why did u make multiple instagram account…"] Cuz she's a bitch |
| desmond | 14:40 | Who can I pay to break into [Jane Doe] house and rape her |
| sab | 14:56 | desmond send me the money ill take care of her |
| desmond | 14:56 | You got her addy |
| sab | 14:56 | i still have her dox |
| desmond | 14:56 | I want her dead and decapitated |
| sab | 14:56 | send me the money |
| desmond | 14:56 | You will cut her head |
| sab | 14:57 | and ill make sure she gonna die |
| desmond | 14:57 | Let me go get Kashiva's credit card. She my mom |
| sab | 14:58 | via btc dummy |

12

| TELEGRAM USER | TIME | MESSAGE |
|---|---|---|
| desmond | 17:33 | KILL [JANE DOE] |

A screenshot of a different conversation on the "Doxbin" Telegram group chat was located on the defendant's iPhone. In this image, a user with Jane Doe's address listed as their username wrote "I live in NY I've already pulled up like 5 times to fight her ex JFKSKFKSKKF . . . I have her entire dox + more everything pretty much."

On November 23, 2020, Jane Doe's TikTok account was hacked. According to information sent to Jane Doe by TikTok, her account was accessed by an unrecognized iPhone 11 at approximately 1:37 a.m. on November 23, 2020. The unauthorized user uploaded several photographs of the defendant to Jane Doe's account with the caption "omg he's so hot !!!"

Congress has recognized the seriousness of these crimes by imposing substantial criminal penalties. The defendant made it crystal clear in his messages to Jane Doe that he is "genuinely never going to stop." The defendant has repeatedly demonstrated that nothing—even law enforcement intervention—will make him stop terrorizing his victims. There is no reason to believe that, if released, the defendant will have any greater regard for any trust placed in him by the Court.

### B. The Evidence of the Defendant's Guilt is Overwhelming

The weight of the evidence against the Defendant is overwhelming. *See* 18 U.S.C. § 3142(g)(2). Many of the electronic accounts and phone numbers used in the course of the offense are tied to the defendant's known phone number and email addresses. Some of the threatening messages were sent using the defendant's primary telephone and social media accounts, and track the same language and issues used by his many other accounts.

During a voluntary, recorded, and *Mirandized* post-arrest interview, the defendant admitted to his use of several of the electronic and social media accounts at issue. After initially denying knowing Jane Doe, and then saying they hadn't communicated since January 2020, he eventually admitted to contacting her over social media. As the interview went on, the defendant admitted to making accounts in Jane Doe's name, taking over her Twitter account, and that his phone was currently logged into her Snapchat account.

As his story to investigators changed, the defendant stated "If I were to, if I did anything, correct, I wouldn't have done anything that big considering I don't know her in real life so I couldn't have done anything anyways, correct. If, it's probably in retaliation of what she, uh you know, accounts." Towards the end of the interview, the defendant stated:

> Everything I've done, if I have done anything, is in retaliation. And, there's nowhere near the amount of what she did. Which is she resorted to doing stuff in real life, as I mentioned before, following me around. The only things I have done, is um you know if whether it is sending messages, just like small things on the internet. But I never resorted to real life.

The evidence shows that the defendant indeed "resorted to real life," including swatting Jane Doe and traveling to the Baltimore residence where her ex-boyfriend used to live to, in the defendant's words, "slap the shit iut [sic] of him.".

The defendant's iPhone also contains overwhelming evidence of his guilt. The device is tied to login credentials of multiple accounts owned by Jane Doe, and includes multiple "screen capture" videos showing a *first-person* perspective of Jane Doe's accounts being taken over and used to post embarrassing or offensive material. Review of the data on the device is only just beginning, as it contains hundreds of thousands of photos, tens of thousands of videos, and extensive data from

14

various social media and electronic communications applications. Many of the photos and videos located on the device thus far depict Jane Doe or her ex-boyfriend.

Investigators have also begun reviewing data from the Notes application on the defendant's iPhone. The defendant's Notes include numerous drafts of messages later sent to Jane Doe and her ex-boyfriend, as well as multiple "to-do" type lists planning out harassment and threats. A to-do list from July 7, 2020, includes the following:

> Online
>
> Bully [Jane Doe's ex-boyfriend] more
> reiterate spic facial features (proof physical)
> Promote like tweet 10000x
> 100x More reciprocation from the bitches ugly
> friends . . .
>
> •RL
>
> go to LA expand network
> Summer session 2
> Hook up with multiple bitches
> FIT in fall expand network there
> Beat up family if I see them ever anywhere
> [Jane Doe] (????) take pics of her irl make fun verbal
> abuse direct not indirect to [Jane Doe]
> Fight and have sex more than 8 times

The evidence that the defendant engaged in the offenses described in the affidavit is overwhelming, and further supports his pretrial detention.

### C. The Defendant's History and Characteristics Support Pretrial Detention

The defendant's history and characteristics, including his mental condition and past conduct, also demonstrate that he should be detained. *See* 18 U.S.C. § 3142(g)(3). The defendant has engaged in a persistent pattern of criminal behavior, terrorizing a young women he has never met in retaliation for her rejecting his online profession of love. His obsessive behavior and fixation

on baseless claims such as his belief that Jane Doe was following him in person indicate that he may be suffering from some form of mental illness. He has demonstrated repeatedly that his behavior will continue even when he is hundreds of miles from his victims. Whether he cannot stop engaging in this criminal conduct, or simply chooses not to, his behavior presents a profound danger to the victims. The defendant's mental condition further supports his detention as a danger to the victims and the community.

### D. Pretrial Release of the Defendant Poses a Grave Danger to the Victims

Most importantly, the nature and severity of the danger that release of the defendant would pose to the community can only be mitigated by pretrial detention. *See* 18 U.S.C. § 3142(e)(1) and (g)(4).

As digital technology has proliferated, extremely small devices can be used to access digital information and communicate on the internet. While detained (as he currently is), the defendant has no access to digital devices or unmonitored communications (except for communications with counsel). As a practical matter, should he be released to live with his mother, there is no way to prevent him from obtaining access to an internet-enabled device or from contacting another individual willing to assist him in further threatening and intimidating the victims, and acting on those threats online and in real life. Any order from this Court prohibiting this conduct could only be enforced after it is violated, with potentially disastrous results for Jane Doe, her ex-boyfriend, their families, and others.

Also central here, the Court can have no confidence whatsoever in the ability and willingness of the defendant's parents to keep him from harassing Jane Doe and the other victims. Beginning no later than June 2020, the defendant's mother has been urged to help stop his criminal

behavior by Jane Doe, the father of Jane Doe's ex-boyfriend, the defendant's sister, and even the police who responded to her home after the swatting of Jane Doe. In response to some of this outreach, the defendant's mother expressed that she did not even want to engage the idea that the defendant might be suffering from mental illness. And despite the various outreach efforts to the defendant's mother, the defendant did not stop. The iPhone 11 apparently used for much of the defendant's criminal activity was paid for through his mother's account, and there is no evidence that she did anything to stop him from continuing to use the device or account.

At the detention hearing on December 22, 2020, the defendant's mother expressed her certainty that the defendant was not capable of doing any of the things he has been charged with, and admitted to. In her view, the defendant is a victim and was at worst involved in some sort of relationship that had been soured; the mother did not seem to comprehend the nature and gravity of what her son has been accused of, and her denials are likely to continue (notwithstanding the detail in the affidavit) should the defendant be returned home, where he can downplay, obfuscate, and mislead his parents about what has transpired. In short, given his mother's denial and inability to stop the defendant's crimes previously, releasing the defendant to her custody would not reasonably assure the safety of the victims, witnesses, or the community.

### III.     CONCLUSION

The evidence demonstrates that the defendant poses a danger to the victims and the community. At this stage in the proceedings, no condition or combination of conditions will reasonably assure e the safety of Jane Doe, her ex-boyfriend, or others in the community. The Southern District of New York's release order should be revoked and the defendant should be ordered temporarily detained pending a detention hearing before a district judge in the District of Maryland.

                                    Respectfully submitted,
                                    Robert K. Hur
                                    United States Attorney

By:     _____/s/_____
                                    Zachary A. Myers
                                    Christopher M. Rigali
                                    Assistant United States Attorneys
                                    36 South Charles Street, Fourth Floor
                                    Baltimore, Maryland 21201
                                    (410) 209-4800